CENTRAL TRUST Co. and another *v.* WABASH, ST. L. & P. RY. Co. and others, and another, Intervenor.[1]

(*Circuit Court, E. D. Missouri.* December 10, 1885.)

RECEIVERS—PERMISSION TO CROSS TRACKS OF RAILROAD AND LAY TRACK IN FRONT OF DEPOT.

 Temporary permission granted a railroad company to construct and operate its road in front of a depot, and across tracks of road in receivers' hands.

In Equity. Intervening petition.

The intervenor alleges that it is a corporation, and has been authorized by an ordinance of the city of St. Louis to construct its track through said city along a designated route, and that the construction of its track along said route will necessitate its crossing the tracks of the Wabash, St. Louis & Pacific Railway Company, now in the hands of receivers, at several places, and asks permission to lay its track, and cross the Wabash tracks, where necessary, upon payment of damages. The receivers and the defendant, by their separate answers, allege that the ordinance referred to in the intervenor's petition is void; that at the time it was passed the intervenor was not incorporated, and was consequently unable to take any thing under such an ordinance; and that the construction of the in-

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

tervenor's track along the proposed route, and along Lewis street, will interfere with the use of the Wabash depot on that street, by impairing access thereto; that the construction of such a track along said street is not such a burden as was contemplated when said street was dedicated to public use; and that the property in said receivers' hands will suffer great damage if the intervenor's track is constructed along said street, and across the Wabash tracks, as proposed. The Wabash, St. Louis & Pacific Railway Company, by its answer, further denies that this court has jurisdiction over the matter, because the circuit court of the city of St. Louis is vested with exclusive jurisdiction over the condemnation of property in said city for railroad purposes by the constitution and laws of Missouri. The petition having been referred to a master, he recommended that the intervenor's prayer be granted, upon condition that the transfer company pay the cost of constructing and maintaining all crossings; and that, in operating the road at such crossings, the intervenor shall yield the right of way to the Wabash trains.

*Hitchcock, Madill & Finkelnburg,* for intervenor.

*H. S. Priest,* for receivers.

*Henry T. Kent,* for defendant.

BREWER, J., *(orally.)*   This is not a case where a foreign corporation comes to this state and sues a domestic corporation, or where the controversy is between citizens of different states, and where there is imposed upon us the absolute duty of determining the ultimate rights of the parties. We have possession of this road by our receivers. That possession is temporary. While it is true we might impose a lien upon the road permanently, following the road through all time, and binding upon whoever should succeed to the title, it does not seem to us that we ought to go beyond the absolute necessities of the case. Considering that our possession is temporary, the orders we make should have a temporary effect only, if by so doing we do not prejudice ultimate and further questions.

Now, so far as the validity of intervenor's incorporation is concerned, it is a *de facto* railroad corporation. If there is any fraud which was perpetrated in its organization, the attorney general of the state can institute proceedings by *quo warranto* to oust it, and that will determine all the rights asserted, or attempted to be exercised. So far as the validity of the ordinance is concerned, it appears to be sufficient to justify us in the action we propose to take. You want the privilege of crossing the tracks in possession of the receivers. You want the privilege of laying your tracks along a street, which, as the master says, will impair access to a depot which belongs to, or the fee of which is in, the Wabash Railroad Company, and which is in possession of our receivers. Now, whether it is necessary that the power of eminent domain should be exercised to appropriate absolutely the right to cross these tracks; whether that constitutional provision of the state of Missouri, that no property shall be

taken or damaged for public use without compensation, is applicable here, or not,—I do, not think it is necessary for us to determine. Whether this is simply one of those consequential injuries to which that section does not apply, or whether it comes within the plain scope of the section as a "damage" done to the property which actually belongs to the Wabash Company, I think, are questions that may be appropriately relegated to and settled in the tribunals of the state, and by those who shall, within a short time, certainly very brief we hope it may be, become the possessors, owners, and managers of this Wabash road. It is fair, however, to those parties who may subsequently come into control as well as become the owners of this property that security should be furnished to them as against any wrong which may be done by our directing the receivers to permit the crossings; for if that section of the constitution of your bill of rights does apply, it is certainly true that after occupation—after the damage is done—the party injured has a cause of action for the damages; and so, if it be true that the laying of your tracks on that street, in front of that depot, is a damage to the property within the scope of that section, you are responsible after it is done to any action which the Wabash road may maintain for damages.

Back of that, however, is another question which I ought to refer to; and that is, that it is not gracious in the federal court, which has taken possession of property by its receivers, to make that possession an obstacle to any proposed public improvement. We should, so far as lies within our power, extend every facility to every proposed public improvement, simply aiming to preserve the rights which attach to property while it is in our possession, and that is all.

It seems to us that it will be fair for us in this case to overrule the exceptions to the master's report, *pro forma*, permit its confirmation, and direct the receivers to permit the crossing upon entering into the stipulations suggested in the master's report. As to the last one, that the Wabash Company shall have the precedent right of way, I suppose all that is meant by that is that when two trains approach, at or near the same time, the Wabash road shall have the preference in crossing. That, perhaps, might be made a little more definite in the stipulation, and that stipulation should be signed by the company. Therefore, we confirm the report of the master, in part, with the further stipulation (and to that extent we overrule the master's report) that you give a bond, with sufficient securities, in the sum of $50,000, to pay all damages which shall hereafter in an appropriate action be awarded to the receivers, or to the Wabash road, or its successors, for any damages which the property sustains by reason of your crossing the tracks and laying tracks in the manner proposed.

*Mr. Hitchcock.* There is only one thing I wish to suggest, and I think that I may assume to say what I know is the purpose of the transfer company, that they will not make any objection to the finding of the court, if, as we understand it, we are not to be put in a

position to be debarred from the fruit of the order; that is, we should not be put in a position to be enjoined on the ground that we had not made compensation before we undertook to do this.

*The Court,* (BREWER, J.) We have possession of the road, Mr. Hitchcock, and, as far as we can, give permission to occupy during the possession of the receivers.

*Mr. Hitchcock.* The receivers, we do not think, would be likely to do it; but we submit, whether the Wabash, which is the party to do it, will be put in a position, if they choose to seek damages, which shall take away from us the fruit of this order.

*The Court.* That is a question, I think, which we ought to relegate to the state courts to settle.

*Mr. Hitchcock.* This order will give us, conditionally, the right to do what we desire, on the conditions specified.

*The Court.* Yes.

*Mr. Hitchcock.* That is, on condition of giving a bond in the sum of $50,000?

*The Court,* (TREAT, J.) I doubt very much whether the report of the master, as presented to us, involves what you call proceedings for the condemnation of property. This property is in the possession of the officers of this court, and this proposed action is more in the nature of a license to do certain things. That is the meaning of all this,— that the receivers permit these things to be done upon your giving a bond, which, of course, extends as long as we have any control over the road. What may happen thereafter somebody else must provide for.

*Mr. Priest.* I understand your honors to mean that no rights which the receivers might have, by reason of their control of the road, to any damages occasioned by reason of this interference, are to be determined in this matter; that this, in fact, amounts to an adjudication of nothing, so far as the ultimate rights of the parties are concerned.

*The Court,* (BREWER, J.) In view of the situation, we think it would be ungracious and improper in us to stand in the way of what is apparently a public improvement; and as to the mere matters of compensation, damages, and things of that kind, we do not think we ought now to determine them.

*Mr. Priest.* Then the receivers may be so advised by counsel not to institute a suit to recover damages by reason of this occupation; in other words, this finding of your honors leaves it in that way, as I understand?

*The Court,* (BREWER, J.) The mere question of damages can be litigated hereafter. As to whether and how much these receivers are damaged during the brief time they occupy the road, may present a different question.

*Mr. Hitchcock.* Is this bond to be made to the benefit of the receivers of the Wabash road, or its assigns?

*The Court,* (BREWER, J.) We have in our state a provision that

bonds in similar proceedings may be given to the state, and sued upon by any person entitled to the benefit of them.

*Mr. Priest.* There is no such provision in our law.

*Treat, J.* You can make it to the clerk of the court.

*Brewer, J.* Conditioned for the payment of all damages which may accrue to any person interested by reason of crossings, etc.

*Treat, J.* I would like to have it a little more definite in reference to this preference of right of way. Perhaps all railroad men know what it means. Certainly it does not mean that the Wabash can leave a whole train to stand indefinitely on the crossing, so that the train of the other road cannot cross. I should like to have it a little more precise on that point.

*Mr. Priest.* I think we understand the order and the spirit in which it is intended.

*Mr. Hitchcock.* It is a thing understood among railroad men that where trains approach a crossing, and the question is raised which shall stop, that the older company shall have the right to go over first.

*Treat, J.* Well, you can prepare the order in that form.

*Mr. Priest.* There will be no disagreement about that matter.

*Treat, J.* The only thing is to exclude a conclusion.

*Mr. Priest.* I wish to suggest, in case the intervenor should want to appropriate that part of the property not expressed in the dedication which constitutes, properly, the right of way of the Wabash Company, that the bond ought to be increased. The finding of the master only goes to the extent of this piece of property on which he has reported, viz., the crossings and the depot property, and does not include property lying on North Market street.

*Brewer, J.* We have no *data* to estimate that.

*Mr. Priest.* There was testimony in regard to the measure of damages.

*Mr. Hitchcock.* That was reserved by consent of all parties. That matter can go back. We do not think we shall want to use that.

*Brewer, J.* Perhaps you should send that back to the master.

*Mr. Hitchcock.* I suggest the confirmation of the report be accompanied with an order that the matter be referred to the master for further consideration, with leave to the intervenor to apply for a reference to the master in the event it is desired to construct tracks on that land.

*Mr. Priest.* I suggest that all difficulties of that sort can be obviated by increasing the bond to $75,000.

*Brewer, J.* We do not think there is any occasion for that. It is pretty large, anyhow, and that would be increasing it upon a mere possibility. If they do not want to occupy it, there will be no use of speculating as to damages.

(December 11, 1885.)

Counsel for intervenors stated that he had prepared and was ready to submit an order in accordance with the finding of the court ren-

dered yesterday. Counsel for the receivers stated that they had not had an opportunity to examine the order carefully; but, from the casual examination which they had given it, they had discovered some parts of the order were objectionable, and not in accordance with the finding of the court on yesterday.

*Treat, J.* You will understand that we direct our receivers to allow these tracks to be laid upon the party giving bond to answer to any damages that may accrue to the receivers or their successors, and there we stop. We have nothing more to say. We hope to get rid of this property at an early day, and then the purchasers may litigate these matters wherever they please. We are not going to charge a perpetuity or burden upon this property while it is in our possession temporarily.

*Mr. ——.* But while it is in the possession of the court it will permit these crossings to be made?

*Treat, J.* Yes.

*Mr. Priest.* I understood this question to be addressed to Judge BREWER, on the supposition that the Wabash Railway Company for itself might undertake to prevent the location of these tracks, so far as its interests were concerned,—that is, a remainder interest, not a present possession or interest, but whatever future interest it may have, —that the courts would be open to it for the protection of those interests in any manner it might deem advisable.

*Treat, J.* The simple proposition was this. Perhaps you did not catch the remarks of Brother BREWER in their entirety, and I did not wish to supplement them, except on one or two points, that the finding might be understood. Here is a property, as far as the court is at present advised, by which you have spurs, so to speak, running down to the river in every direction. Here is a rival road, if you choose, that cannot accomplish its ends without crossing your various spurs. Now your various spurs depend upon different titles. For some you have a license from the city. If we take up for adjudication each one of these crossings, with separate interests, there might be very important separate inquiries. In regard to the depot, you have the question of "damages," as well as the condemnation of the absolute right of property elsewhere. There are many grave questions involved, but this court did not choose to pass upon those at all, for the reason that this property is in the hands of the receivers of this court temporarily. What shall be done with the property while in the hands of the receivers is one question, and the court would not undertake to adjudicate, through the process of condemnation, or otherwise, the ultimate determination of questions connected with this vast property. It is no part of the business of this court, when this property is in the hands of the receivers, to adjudicate such questions at all. We cannot go back and create any rights or liens on this property that shall pass, not only as against the present owners of the property, but against all purchasers hereafter, or estab-

lish new liens or demands. The point I insisted upon in conference with my Brother BREWER was that we could not do that. We simply preserve the property for the interests of all concerned. Here was a novel question presented,—novel in this one sense, viz., that this property was in the hands of a receiver; there is another public enterprise; and if we did not permit the receivers to assent thereto, another great enterprise would be obstructed. You are all here under a franchise from a common government, which looks to the public good. That is the underlying thought. Now, we say we will allow our receivers to permit the crossings, etc., without charging any permanent servitude on the property at all. We will do nothing but grant what might be called "a license." That is all these parties are going to acquire, so far as this court is concerned, during the pendency of the receivership. We will permit this to be done on the giving of a bond to respond to any damages of parties in interest. We don't decide ultimate questions at all. That may be done hereafter. If this road goes to a foreclosure and sale, parties may do whatever they choose,—we don't propose to pass on those questions, and intended to eliminate them entirely.

*Mr. Priest.* That, I understand, is in regard to the possessory interests of the receivers, so far as they are concerned, and I only look to their interests in this matter.

*Treat, J.* They are the officers of the court, and we direct them to do this on receiving this bond. That is all. If there are questions behind that, which go to the ultimate determination of titles, etc., this court is not going to pass upon them at present. Let the proper tribunal pass upon them when they arise. We do not determine what that proper tribunal is. We merely say we will not do it now.

*Mr. Priest.* I am glad to have the expression of the court upon this point. It is suggested that the receivers may, possibly, during the continuance of their possession, suffer damages by reason of the crossing at this depot.

*Treat, J.* Well, they will have to be paid. The bond that we retain for damages, if there are any, is for that purpose.

*Mr. Priest.* How are we to ascertain those damages?

*Treat, J.* That will go to the master at the proper time.

*Mr. Priest.* By petition filed?

*Treat, J.* Oh, no. It is a part of the pending matter. There is no need of going though it again.

*Mr. Priest.* We wish to be careful, so that the jurisdiction may be preserved against the parties to respond to any action which the receivers may present, by way of a bill, against them, before the master, for such damages as they may sustain.

*Treat, J.* Judge BREWER said yesterday,—perhaps you did not catch it,—"Reserving all further questions in regard to any damages that may be sustained in the pending matter." There is no need of bringing a new action at all. We retain the case as presented, on the

application of Mr. Finkelnburg. You ask certain things. You have failed to agree. It has been before the master. It comes back on exceptions. *Pro forma* we overrule those exceptions, and make an order of our own that, instead of paying so much money, etc., you give a bond in the form prescribed; and the application is reserved for the further consideration of the court under the bond, and it does not require any new proceeding at all.

*Mr. Priest.* I understand it now. I did not understand Judge Brewer. The draft of the order, as submitted to me, does not contemplate that interlocutory decree, but is a final determination of the matter.

*Treat, J.* There is no final determination.

*Mr. Kent.* That is exactly what we want reserved.

*Treat, J.* That was reserved. The exceptions were filed to the master's report. They were overruled *pro forma.* That is a very expressive phrase, indicating that we do not pass on the merits of anything underlying it, but in the light of what was said, and in the light of that report, we chose to make a new and independent order, not following the master in the report at all. We give a new and independent order that, instead of your paying $25,000, you shall give a bond, which was entirely outside the master's report. It seems to me the decree can be written in this matter very concisely, and accomplish all that is desired, to-wit: "This matter having come on to be heard," etc., "the court orders, adjudges, and decrees as follows,"— that is all. Then say that we overrule *pro forma* the exceptions to the master's report; and thereupon the court orders, adjudges, and decrees as follows, to-wit: That the receivers permit the crossings to be made of the property now in their custody under the orders of this court, on the giving of a bond in the sum of $50,000 to respond to any damages that may accrue to the receivers or their successors in interest, to be hereafter determined, and said crossings to be conducted as you have agreed on, reserving all questions under the said bond as to any damages that may accrue during the pendency of the receivership.